**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SONRAI SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-CV-02575 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WASTE CONNECTIONS OF CANADA, INC., | ) | Honorable John Robert Blakey |
| | ) | |
| Defendant. | ) | |

**SONRAI SYSTEMS, LLC'S MEMORANDUM IN RESPONSE TO WASTE
<u>CONNECTIONS OF CANADA, INC.'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

RELEVANT BACKGROUND ...........................................................................2

LEGAL STANDARD ..........................................................................................5

ARGUMENT ........................................................................................................5

I.      The Trade Secret Claims Are Adequately Pled And Not Time Barred......................5

      A.      The DTSA and ITSA Claims are Adequately Pled...........................................6

            1.      Sonrai has properly alleged the existence of a trade secret................................................................................ 6

            2.      Sonrai has properly alleged misappropriation of its trade secrets............................................................. 9

      B.      Sonrai's DTSA and ITSA Claims are Not Time Barred................................ 10

II.      The Breach of Contract Claim Is Adequately Pled And Not Time Barred. ......................................................................................................... 11

      A.      The Contract Claim is Adequately Pled. ...................................... 11

      B.      The Contract Claim is Not Time Barred. ...................................... 12

III.      The Conspiracy Claim Is Adequately Pled And Not Time Barred. ......................... 13

      A.      The Conspiracy Claim is Adequately Pled. ................................. 13

      B.      The Conspiracy Claim is Not Time Barred. ................................. 15

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adcock v. Brakegate, Ltd.*,
   164 Ill. 2d 54 (1994) .................................................................................................14

*Aon plc v. Infinite Equity, Inc.,*
   2021 WL 4034068, at \*12 (N.D. Ill. Sept. 3, 2021) ...................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................5

*Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*,
   2011 WL 3876947 (N.D. Ill. Sept. 1, 2011) ...........................................................11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................5, 11

*Bontkowski v. First National Bank of Cicero*,
   998 F.2d 459 (7th Cir.1993), *cert. denied*, 510 U.S. 1012 (1993)............................5

*Busey Bank v. Turney*,
   2022 WL 92940 (N.D. Ill. Jan. 10, 2022) .................................................................9

*Chartwell Studio, Inc. v. Team Impressions, Inc.*,
   2020 WL 4053752 (N.D. Ill. July 20, 2020)..............................................................8

*Cognis Corp. v. CHEMCENTRAL Corp.*,
   430 F. Supp. 2d 806 (N.D. Ill. 2006) ......................................................................10

*Covenant Aviation Sec., LLC v. Berry*,
   15 F. Supp. 3d 813 (N.D. Ill. 2014) ..........................................................................6

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   362 F. Supp. 3d 558 (N.D. Ill. 2019) ........................................................................6

*Eng'g Res., Inc. v. CRS Steam, Inc.*,
   1996 WL 73616 (N.D. Ill. Feb. 16, 1996) ...............................................................11

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*,
   799 F. Supp. 2d 846 (N.D. Ill. 2011) ........................................................................8

*GlobalTap LLC v. Elkay Man. Co.*,
   2015 WL 94235 (N.D. Ill. Jan. 5, 2015).....................................................................8

i

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) ........................................................................8

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
   342 F.3d 714 (7th Cir. 2003) ........................................................................8

*Mainline Info. Sys., Inc. v. Benkendorf*,
   2010 WL 2011618 (N.D. Ill. May 20, 2010) ...............................................14

*Master Tech Prod., Inc. v. Prism Enterprises, Inc.*,
   2002 WL 475192 (N.D. Ill. Mar. 27, 2002)...................................................7

*Mission Measurement Corp. v. Blackbaud, Inc.*,
   216 F. Supp. 3d 915 (N.D. Ill. 2016) ...............................................7, 11, 12

*Molon Motor & Coil Corp. v. Nidec Motor Corp.*,
   2017 WL 1954531 (N.D. Ill. May 11, 2017) .................................................6

*Montel Aetnastak, Inc. v. Miessen*,
   998 F. Supp. 2d 694 (N.D. Ill. 2014) ..........................................................13

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
   436 F. Supp. 3d 1150 (N.D. Ill. 2020) ........................................................10

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*,
   2018 WL 1156246 (N.D. Ill. Mar. 5, 2018)...................................................8

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
   2011 WL 1626546 (N.D. Ill. Apr. 28, 2011) .........................................11, 12

*Packaging Corp. of Am., Inc. v. Croner*,
   419 F. Supp. 3d 1059 (N.D. Ill. 2020) ........................................................10

*Restoration Specialists, LLC v. Hartford Fire Ins. Co.*,
   2009 WL 3147481 (N.D. Ill. Sept. 29, 2009) ..............................................14

*Segerdahl Corp. v. Ferruzza*,
   2019 WL 77426 (N.D. Ill. Jan. 2, 2019) ..................................................8, 13

*Semitekol v. Monaco Coach Corp.*,
   582 F.Supp.2d 1009 (N.D. Ill. 2008) ..........................................................14

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
   782 F.3d 922 (7th Cir. 2015) .........................................................10, 13, 15

*Stereo Optical Co. v. Judy*,
   2008 WL 4185689 (N.D. Ill. Sept. 8, 2008) ................................................14

*Strata Mktg., Inc. v. Murphy*,
  317 Ill. App. 3d 1054 (2000) .................................................................................9

*Symbria, Inc. v. Callen*,
  2022 WL 60530 (N.D. Ill. Jan. 6, 2022) ...........................................................6, 9

*Talbert v. Home Sav. of Am., F.A.*,
  265 Ill. App. 3d 376 (1st Dist. 1994) ..................................................................11

*XPO Logistics, Inc. v. Best Dedicated Solutions, LLC et al*,
  2017 WL 4150779 (N.D. Ill. Sept. 18, 2017) .....................................................13

*Zeigler Auto Grp II, Inc. v. Chavez*,
  2020 WL 231087 (N.D. Ill. Jan. 15, 2020) ...........................................................8

**Statutes**

735 ILCS 5/2-725(2)............................................................................................13

735 ILCS 5/13-206 ..............................................................................................13

765 ILCS 1065/2, *et seq*...........................................................................4, 7, 9, 11, 13

18 U.S.C. § 1831, *et seq*..............................................................................4, 7, 9, 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).........................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1

Plaintiff Sonrai Systems, LLC ("Sonrai" or "Plaintiff") respectfully submits this Memorandum in Response to Defendant Waste Connections of Canada, Inc.'s ("WCC") Motion to Dismiss Sonrai's Second Amended Complaint (the "Motion").

## INTRODUCTION

This case involves the misappropriation and unauthorized use of Sonrai's groundbreaking Vector and RFID technologies. (Dkt. 54.) Vector provides a waste hauling truck fleet operator with data relating to the truck chassis and the waste collection body in real-time, which allows the fleet operator to optimize truck routes, manage work orders, handle dispatch operations, and manage inventory. (*Id*. ¶¶ 10-13.) It is one of the first of its kind to streamline these processes into one portal, and the Vector technology is extremely valuable in the waste hauling industry. Sonrai's RFID technology is also highly valued because it allows its customers to track an individuals' purchasing trends. (*Id.* ¶¶ 10-11.) WCC also thought Sonrai's technologies were valuable. (*Id.* ¶¶ 2, 19, 30, 45.) In fact, WCC thought the technologies were so valuable that WCC stole and used Sonrai's products and services without compensation to Sonrai. By doing so, WCC violated its contracts with Sonrai in addition to state and federal law.

WCC attempts to deflect the Court's attention away from its illegal acts through its Motion to Dismiss Sonrai's Second Amended Complaint ("SAC").[1]  (Dkt. 62.) The Motion asserts that Sonrai's claims fail to state a claim and are time-barred by each claim's statute of limitations. WCC's arguments, however, lack merit and attempt to assign factual standards far and above those applied at the pleadings stage. For example, WCC makes (faulty and incorrect) arguments typically seen at the summary judgment, trial, and/or preliminary injunction stage and attempts to mold case

---

[1] Although WCC's Motion to Dismiss states that it brings this motion pursuant to Fed. R. Civ. P. 12(b)(2), the memorandum in support only appears to raise arguments pursuant to 12(b)(6). (Dkt. 62.) Accordingly, Sonrai only addresses the 12(b)(6) arguments.

law from summary judgment, trial, and/or preliminary injunction rulings into a sustainable motion to dismiss. Unfortunately, WCC's arguments crumble under a simple review of the SAC and federal pleading standards. More specifically, a reading of the SAC reveals that Sonrai has adequately plead the necessary facts and elements to put WCC on notice of its claims against WCC. This Court should deny WCC's Motion to Dismiss and allow Sonrai's claims to proceed.

## RELEVANT BACKGROUND

Sonrai's began discussions with WCC regarding the Vector technology in 2013, when WCC executives met with Sonrai in Chicago about their product and service offerings for waste hauler fleets. (*Id*. ¶ 19.) After this meeting, WCC was so impressed with Sonrai's Vector technology that it proposed placing the Vector and/or RFID technologies in all of WCC's 4,860 trucks. (*Id*. ¶¶ 20-28.) Sonrai then placed and tested 276 Vector and 139 RFID units at five different WCC locations. (*Id*. ¶¶ 27-28.) Sonrai incurred significant installation and testing expenses through the placing of Vector and RFID units in WCC trucks. (*Id*. ¶¶ 28-29.)

WCC's Director of Information Technology Operations Applications, Charles Palmer ("Palmer"), praised the performance of Sonrai's test products and services, and proposed financial terms for the rollout of Sonrai's technologies on the remainder of WCC's trucks. (*Id*. ¶¶ 30-32.) In exchange for a license to use Sonrai's technologies, WCC would pay:

(1) $246.70 per Vector device;
(2) $350 for additional hardware, including cables, per truck;
(3) $75 in installation fees per truck;
(4) a monthly data fee of $45.29 per truck; and
(5) inclinometers and RFID units on an as-needed basis.

(*Id*. ¶¶ 32-33, 40-41.) Sonrai agreed to these terms and put them in writing in the invoices. (*Id*. ¶¶ 35-39.) The terms were signed and accepted by Palmer on behalf of WCC, and Sonrai began submitting Vector sales orders and invoices in May 2014. (*Id*. ¶¶ 35-39, 42-43.)

At the end of 2015, Anthony Romano ("Romano"), a former Sonrai employee who worked closely with WCC in deploying the Vector and RFID technologies, conspired with WCC to steal Sonrai's trade secrets in exchange for Palmer's assistance with Romano obtaining a 20% ownership interest in Sonrai. (*Id*. ¶¶ 46-48.) Palmer demanded that Sonrai grant Romano an ownership interest and implied that if Romano did not receive such interest, Sonrai's relationship with WCC would suffer. (*Id*. ¶¶ 49-51.) Romano resigned from Sonrai in January 2016 after not receiving the 20% ownership interest, and WCC hired Romano as a consultant to assist WCC in implementing a scheme to surreptitiously steal Sonrai's Vector technology. (*Id*. ¶¶ 52-53.)

WCC and Romano also conspired to cut Sonrai out of a project with WCC's customer, the Region of Peel, and deploy Vector across WCC's entire fleet without compensating Sonrai for the use of Vector. (*Id*. ¶ 56.) They enlisted the assistance of Geotab, Inc. ("Geotab"), which provided WCC with administrative access to Sonrai's website, allowing WCC to view route and other information of Sonrai's customers without Sonrai's knowledge. (*Id*. ¶¶ 56-58.) WCC knew that Sonrai would not provide administrative access to Sonrai's website, and once WCC gained access to it through Geotab, WCC changed the access codes and locked Sonrai out of its own website. (*Id*. ¶¶ 59-60.) To justify its misconduct, WCC began lodging false system complaints against Sonrai to purposely cause its relationship with Sonrai to deteriorate. (*Id.* ¶¶ 61-63.)

WCC informed Sonrai it was terminating its relationship with Sonrai on March 1, 2016, but WCC continued to negotiate its relationship with Sonrai through November 2017. (*Id*. ¶¶ 64-67.) WCC also continued to pay Sonrai for its use of Vector through June 2018 in accordance with the agreement between Sonrai and WCC. (*Id*. ¶¶ 44, 68-71.) After ceasing payments for Vector in June 2018, however, WCC refused to return Sonrai's trade secrets (*i.e.* Vector) and

continued using Vector without Sonrai's permission. (*Id*. ¶¶ 72-73.)  As a result, Sonrai's trade secrets continue to be retained and used by WCC without Sonrai's permission. (*Id*. ¶ 73.)

Sonrai was made aware of the extent of this scheme between WCC, Romano, and Geotab in February 2020. (*Id*. ¶ 74.) In February 2020, the Region of Peel contacted Sonrai asking for technical help to solve a problem relating to Vector. In doing so, the Region of Peel provided Sonrai with access codes to view the Vector portal from which Sonrai was previously locked out. (*Id*. ¶ 75.)  When Sonrai logged into the Vector portal, Sonrai saw that WCC was using Vector throughout the United States and Canada to service customers for which Sonrai had not previously provided the Vector product. (*Id*.)  In other words, WCC had been profiting from the use of Sonrai's trade secrets for several years without Sonrai's knowledge, authorization, or permission. (*Id.* ¶ 76.) Worse yet, Sonrai's business interests were irreparably harmed, and continue to be harmed, by WCC's unlawful possession and use of Sonrai's trade secrets. (*Id*. ¶¶ 76-81.)

On April 2, 2021, Sonrai initiated this action against Waste Connections US, and Sonrai subsequently amended its Complaint to name WCC as the sole defendant and allege four causes of action against WCC: (1) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*., (the "DTSA"); (2) violations of the Illinois Trade Secrets Act, 765 ILCS 1065 *et seq.*, (the "ITSA"); (3) breach of contract; and (4) common law civil conspiracy.  (Dkt. 54.)  WCC now moves to dismiss all claims for failure to state a claim and for being time-barred by each claim's statutes of limitations. [2]  For the reasons set forth more fully below, WCC's Motion should be denied.

---

[2] WCC correctly, but misleadingly, points out that this is Sonrai's third time amending its Complaint.  The first two times, however, revolved around Sonrai naming the incorrect Waste Connections entity as defendant.  Counsel for Sonrai and WCC worked together to resolve the wrong defendant dispute, and this is the first time that the Court is addressing the facts and legal claims contained in the SAC.  *(See* Dkt. 51.)

## LEGAL STANDARD

When reviewing a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.1993), *cert. denied*, 510 U.S. 1012 (1993). A complaint need not offer "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint need only state a claim to relief that is plausible on its face and that is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. (*Id.*).

## ARGUMENT

**I.     The Trade Secret Claims Are Adequately Pled And Not Time Barred.**

WCC claims that Sonrai's trade secret claims should be dismissed for several reasons, including that Sonrai does not adequately allege the existence or misappropriation of a trade secret under either the DTSA or ITSA, and Sonrai's trade secret claims are time-barred by the statutes of limitations. (Dkt. 63 at 3-11.) These claims lack merit. First, the existence of a trade secret and whether the trade secret is adequately protected are fact questions that are resolved later in the litigation, not at the pleading stage. Next, Sonrai learned of its trade secret claims against WCC in February 2020 after being contacted by the Region of Peel. Sonrai filed suit a little over one year later, after conducting its investigation, and, as a result, the statute of limitations period for both the DTSA and ITSA are inapplicable. Lastly, the allegations in Sonrai's Complaint reveals the unauthorized *use* of Sonrai's trade secrets under both the DTSA and ITSA by WCC. For these reasons, the Court should deny WCC's motion to dismiss the trade secret claims.

5

## A. The DTSA and ITSA Claims are Adequately Pled.

Courts often analyze motions to dismiss DTSA and ITSA claims together because "the pertinent definitions of the two acts overlap." *Aon plc v. Infinite Equity, Inc*., 2021 WL 4034068, at *12 (N.D. Ill. Sept. 3, 2021); *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at *3 (N.D. Ill. May 11, 2017) (differences in definitions between DTSA and ITSA are "immaterial" for purposes of resolving a motion to dismiss). In order to meet DTSA and ITSA pleading requirements, Sonrai must allege that (1) it has trade secrets and (2) Defendant misappropriated those trade secrets. *Molon*, 2017 WL 1954531, at *3. Sonrai's SAC meets both requirements.

### 1. Sonrai has properly alleged the existence of a trade secret.

As a preliminary matter, the existence of a trade secret is ordinarily a question of fact best resolved by a fact finder after the full presentation of evidence from each side. *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014). Thus, whether Sonrai's Vector technology, data, and services amount to a trade secret are best left for a later stage in the litigation. Nonetheless, at the motion to dismiss stage, courts in this circuit "have found [trade secret] allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation*, 15 F. Supp. 3d at 818; *Symbria, Inc. v. Callen*, 2022 WL 60530, at *11 (N.D. Ill. Jan. 6, 2022); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573-75 (N.D. Ill. 2019). Sonrai's SAC meets the DTSA and ITSA pleading requirements enunciated in *Covenant Aviation*, *Symbria,* and *Dealer Mgmt.*

More specifically, the SAC identifies Sonrai's alleged trade secrets as the technological products and services (consisting of programs, formulas, devices, methods, and/or processes) that include, but are not limited to, the following: (1) technology products and services that collect and disseminate data from the chassis and body of a garbage truck so that waste haulers may control

their backroom and automation costs; (2) the Sonrai-developed "event validation system", which establishes a computer-based visual confirmation that the waste hauling service has been completed in real time; and (3) the Vector and RFID technologies that provide benefits such as, *inter alia*, transit visibility, work order management, dispatch operations, route optimization and tracking, inventory asset optimization, and service verification. (Dkt. 54 ¶¶ 9-10, 13.) Such allegations fit squarely in the definition of "trade secrets" under both the ITSA and DTSA and are sufficient to provide WCC with notice of the confidential information it claims are trade secrets. 18 U.S.C. § 1839(3) & 765 ILCS 1065/2(d) (identifying technical information or data, formulas, patterns, compilations, programs, devices, methods, or processes as examples of trade secrets); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016).

The SAC also alleges that Sonrai's trade secrets derive independent economic value from not being generally known or ascertained by others. In fact, the SAC alleges (1) a Sonrai competitor could not easily replicate or reengineer the Vector or RFID confidential information without incurring significant economic, technological and labor costs; (2) Sonrai receives a financial and economic benefit from the information being kept confidential; (3) a competitor would receive a significant economic benefit and other industry advantages if the information was stolen and then used by that competitor; and (4) Palmer described access to Sonrai's services as "a game changer". (Dkt. 54 ¶¶ 16-17, 31.) Such information is economically valuable because Sonrai not only incurred significant time and costs in developing the Vector but it also allows Sonrai to solicit business from waste management fleets. Therefore, Sonrai has sufficiently alleged that its trade secrets derive independent economic value. *See Master Tech Prod., Inc. v. Prism Enterprises, Inc.*, 2002 WL 475192, at *5 (N.D. Ill. Mar. 27, 2002) (time and money for the defendant to replicate and the value to the plaintiff are relevant trade secret inquiries).

The SAC further alleges that its trade secrets were kept secret because (1) the formulas and processes for the development of Sonrai's Vector and RFID technology are only known by a select few of Sonrai's employees and are not disclosed to third parties; (2) confidential information is disclosed on a need-to-know basis within Sonrai; (3) Sonrai computer networks are password-restricted; (4) employees of Sonrai and its affiliated company, ACES, sign written agreements prohibiting the disclosure of Sonrai's confidential information; and (5) Sonrai enters into confidentiality agreements with companies that will have access to Sonrai's confidential information. (Dkt. 54 ¶¶ 14-15.) These are reasonable measures for keeping the information secret and satisfy the federal pleading requirements. *Segerdahl Corp. v. Ferruzza*, 2019 WL 77426, at *3 (N.D. Ill. Jan. 2, 2019). Regardless, the pleadings stage is not the appropriate place for addressing the "reasonableness" of trade secret protection. Rather, the determination of whether Sonrai acted reasonably in protecting its trade secrets is made at the later stages of the litigation (*i.e.*, after discovery and at summary judgment or trial). *Chartwell Studio, Inc. v. Team Impressions, Inc.*, 2020 WL 4053752, at *7 (N.D. Ill. July 20, 2020); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003).

Not surprisingly then, the majority of cases relied upon by WCC do not concern a motion to dismiss. Two cases cited by WCC in their Motion, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) and *GlobalTap LLC v. Elkay Man. Co.*, 2015 WL 94235, at *5 (N.D. Ill. Jan. 5, 2015), address motions for summary judgment. (Dkt. 63 at 4.) Another case cited by WCC, *Zeigler Auto Grp II, Inc. v. Chavez*, 2020 WL 231087 (N.D. Ill. Jan. 15, 2020), concerns a request for a preliminary injunction. Although *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) and *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) do address motions to dismiss, both cases

only address situations in which an agreement restricting the use of information was the *only* protection effort alleged in the Complaint. Here, Sonrai's SAC alleges that its trade secrets are protected by, among other things, passwords, disclosure on a need-to-know basis, a premier server, and written agreements with employees and other companies. (Dkt. 54 ¶ 15.)

WCC also cites *Busey Bank v. Turney*, 2022 WL 92940, at *5 (N.D. Ill. Jan. 10, 2022) and *Strata Mktg., Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1069 (2000) to claim that Sonrai failed to adequately allege the economic value for its trade secrets. (Dkt. 63 at 6.) In both cases, however, the plaintiff sufficiently alleged the existence of trade secrets because the trade secrets were claimed to take considerable time, effort, and money to compile. *Busey Bank*, 2022 WL 92940, at *6; *Strata Mktg.*, 317 Ill. App. 3d at 1069. Sonrai, too, makes these allegations and, as such, *Busey Bank* and *Strata Mktg.* actually support the denial of WCC's Motion. *See, e.g.*, Dkt. 54 ¶ 90.

### 2.    Sonrai has properly alleged misappropriation of its trade secrets.

Under the DTSA and ITSA, a plaintiff can show misappropriation by demonstrating unauthorized acquisition, disclosure, or use of a trade secret. *Symbria, Inc. v. Callen*, 2022 WL 60530, at *12 (N.D. Ill. Jan. 6, 2022); 18 U.S.C. § 1839(5); 765 ILCS 1065/2. Sonrai has sufficiently pled misappropriation under both statutes. The SAC alleges that WCC *used* its trade secrets without Sonrai's consent and acquired the trade secrets through improper means in violation of both the DTSA and ITSA. For example, Sonrai alleges: (1) Sonrai granted a license to WCC to use Vector so long as WCC paid for its use; (2) WCC was legally and contractually obligated to return Sonrai's trade secrets, including Vector, to Sonrai when it ceased paying for its license; (3) WCC ceased paying for its license in June 2018 but refused to return Sonrai's trade secrets; (4) WCC worked with former employees to gain access to and control of Vector without Sonrai's authorization; and (5) WCC cut Sonrai from the business transaction while continuing to use Sonrai's confidential information, including Vector, for its benefit. (Dkt. 54 ¶¶ 41, 44, 54-58,

9

60, 91, 92.) These allegations are sufficient to state a claim for misappropriation of trade secrets. *See Cognis Corp. v. CHEMCENTRAL Corp.*, 430 F. Supp. 2d 806, 811-12 (N.D. Ill. 2006).

WCC's argument that WCC obtained access to Sonrai's trade secrets legitimately, and cannot have misappropriated them, is unavailing. WCC cites *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1062 (N.D. Ill. 2020) to support the argument that WCC could not have improperly used Sonrai's trade secrets by failing to return them because WCC acquired them in the normal course of business. (Dkt. 63 at 7.) In *Croner*, however, the defendant was plaintiff's former employee and was *paid by plaintiff* to acquire, accumulate, and assemble plaintiff's trade secrets. *Croner*, 419 F. Supp. 3d at 1066. The *Croner* court then stated that "the misappropriation analysis hinges on whether [plaintiff] adequately alleges that [defendant] has disclosed or used the trade secrets without express or implied consent." *Id.* (emphasis added). By contrast, here, Sonrai did not pay WCC to accumulate its trade secrets and, just as important, used Sonrai's trade secrets without Sonrai's express or implied consent after WCC's contract with Sonrai terminated.

WCC also relies on *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1164 (N.D. Ill. 2020), a trial decision, to support its argument that Sonrai has failed to plead details concerning how WCC "used, marketed, or exploited" Sonrai's trade secrets. (Dkt. 63 at 8.) This argument, however, attempts to apply a standard that is far beyond what a pleading requires; Sonrai only needs to raise a reasonable inference that WCC had access to Sonrai's trade secret and is exploiting it at the pleading stage. *Cognis Corp.*, 430 F. Supp. at 811-12. Sonrai has done that here and, therefore, it adequately alleges that WCC misappropriated its trade secrets.

### B. Sonrai's DTSA and ITSA Claims are Not Time Barred.

Sonrai's DTSA and ITSA claims are also not time barred. As an initial matter, statutes of limitations defenses are typically addressed at summary judgment or trial. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there

is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)."); *Eng'g Res., Inc. v. CRS Steam, Inc.*, 1996 WL 73616, at *7 (N.D. Ill. Feb. 16, 1996) (whether a plaintiff should have reasonably known it was wronged or whether it used reasonable diligence are questions of fact).

Moreover, even if statutes of limitations issues were addressed at the pleadings stage, Sonrai has sufficiently alleged that its DTSA and ITSA claims are not time barred. The statute of limitations is three years (for DTSA) and five years (for ITSA) from the date that the misappropriation <u>is discovered</u> or should have been discovered. 18 U.S.C. § 1836(d); 765 ILCS 1065/7. As stated in the SAC, Sonrai discovered that WCC misappropriated its trade secrets in 2020 when it was contacted by the Region of Peel. (Dkt. 54 at ¶¶ 74-75.) Accordingly, the statute of limitations on Sonrai's DTSA and ITSA claims began accruing in 2020.[3] Sonrai's trade secrets claims are, therefore, not time barred, and WCC's motion to dismiss should be denied.

## II. The Breach of Contract Claim Is Adequately Pled And Not Time Barred.

### A. The Contract Claim is Adequately Pled.

WCC claims that Sonrai failed to provide "details about the contract," and this is fatal to Sonrai's breach of contract claim. (Dkt. 63 at 11.)[4] Sonrai, however, is not required to plead all of the specifics underlying a straight-forward breach of contract claim like the one at issue here. *Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, 2011 WL 3876947, at *12 (N.D. Ill. Sept. 1, 2011); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2011 WL 1626546, at *2 (N.D. Ill. Apr. 28, 2011). Instead, Sonrai only needs to plead "enough facts to raise a reasonable

---

[3] WCC ceased payment for Sonrai's Vector technology in June 2018. (Dkt. 54 ¶ 44.) Even if this Court uses June 2018 as the date on which the misappropriation was discovered or should have been discovered, Sonrai is still in compliance with both statutes of limitations periods.
[4] WCC cites *Talbert v. Home Sav. of Am., F.A.*, 265 Ill. App. 3d 376, 380 (1st Dist. 1994), but this reliance is misplaced. *See Mission Measurement Corp.*, 287 F. Supp. 3d at 716.

expectation that discovery will reveal" evidence supporting Sonrai's claims. *Twombly*, 550 U.S. at 556.

Hence, Sonrai must only plausibly allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) resultant damages to plaintiff. *Mission Measurement Corp.*, 287 F. Supp. 3d at 715. Sonrai has alleged such facts: (1) WCC and Sonrai entered into an agreement where Sonrai would provide WCC with Vector in exchange for payment for such use; (2) Sonrai has performed under the contract; (3) WCC breached the contract by not returning the Vector devices and not paying all of the usage and data fees it owes Sonrai; and (4) such breach caused Sonrai to incur $665,337.87 in damages plus pre-judgment interest. (Dkt. 54 ¶¶ 118-126.) Sonrai, therefore, provided enough facts to raise a reasonable expectation that discovery will reveal evidence supporting its claims.

WCC's Motion also claims that Sonrai failed to attach the contract at issue to the SAC. (Dkt. 63 at 11.) This claim, however, ignores that the contract is an oral agreement that is memorialized in the invoices attached to the SAC at Exhibit A. (*Id.* ¶¶ 35, 118.) The invoices include the following negotiated terms: (1) fees including $246.70 per Vector device, monthly data management fees, hardware fees, and assembly fees; (2) shipping and delivery terms and conditions; (3) payment terms and conditions; and (4) the three-year obligation to pay for the services. (*Id.* at 22-30.) Accordingly, WCC's "lack of a contract argument" should be ignored.

**B.     The Contract Claim is Not Time Barred.**

WCC claims that Sonrai's breach of contract claim is time barred because the statute of limitations would have expired in February 2020. (Dkt. 63 at 13.) WCC disregards several key facts: the agreement between the parties (and the terms and conditions attached to the back of each invoice) specifies that WCC was to pay for Sonrai's products and services for a minimum of three years; WCC ceased all payments for Sonrai's products in June 2018, not February 2016; and

Exhibit B describes the invoices that are due to Sonrai, rather than the date that WCC's three-year obligation would expire. (Dkt. 54 ¶ 32, 44.) Therefore, WCC's breach of contract occurred in June 2018, and the statute of limitations began to run in June 2018. 735 ILCS 5/2-725(2). Regardless of which statute of limitations applies to this contract,[5] Sonrai's claim is not time barred. For these reasons, WCC's motion to dismiss Sonrai's breach of contract claim must be denied.

## III. The Conspiracy Claim Is Adequately Pled And Not Time Barred.

### A. The Conspiracy Claim is Adequately Pled.

To adequately plead conspiracy, Sonrai must plead "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 721 (N.D. Ill. 2014). Sonrai pled that (1) WCC had an agreement with Romano and Geotab to unlawfully take control of Sonrai's Vector system, and (2) they cut Sonrai out of the business deal that would provide Vector to WCC's fleet of disposal trucks. (Dkt. 54 ¶¶ 83, 85.) These actions caused Sonrai to lose control of its website and incur damages due to WCC's unpaid use of Sonrai's confidential information and trade secrets. (*Id.* ¶ 86.)

Nonetheless, WCC claims that Sonrai's civil conspiracy claim is preempted by ITSA because the conspiracy claim is dependent on the existence of a trade secret. (Dkt. 63 at 13-14.) Here, however, the conspiracy is more than just the misappropriation of trade secrets. The conspiracy also included Romano and Geotab (1) removing Sonrai from a business transaction and (2) avoid paying Sonrai for WCC's continued use of the Vector technology. (Dkt. 54 ¶¶ 83-86.)

---

[5] Sonrai disputes that the contract was one for the sale of goods and subject to the UCC. Rather, the contract is subject to the statute of limitations set forth in 735 ILCS 5/13-206. Regardless, statute of limitations issues are more appropriately resolved in the later stages of litigation. *Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 928.

As such, Sonrai's conspiracy claim may exist to the extent that the conspiracy involved breaching the contract with Sonrai. *Segerdahl Corp.*, 2019 WL 77426, at *7; *XPO Logistics, Inc. v. Best Dedicated Solutions, LLC et al*, 2017 WL 4150779, at *3 (N.D. Ill. Sept. 18, 2017); *Stereo Optical Co. v. Judy*, 2008 WL 4185689, at *5 (N.D. Ill. Sept. 8, 2008).

WCC next claims that Sonrai cannot bring a conspiracy claim against WCC and Romano because there can be no conspiracy between a principal and an agent. This claim, however, overlooks that even if, *arguendo*, Romano were excluded from the conspiracy claim, a conspiracy could still exist between WCC and Geotab. Moreover, Romano can participate in the conspiracy; as a consultant, he is not an agent and such determinations are questions of fact that are not properly resolved on a motion to dismiss. *Restoration Specialists, LLC v. Hartford Fire Ins. Co*., 2009 WL 3147481, at *3 (N.D. Ill. Sept. 29, 2009); *Semitekol v. Monaco Coach Corp*., 582 F.Supp.2d 1009, 1024 (N.D. Ill. 2008).

Further, WCC claims that conspiracy must depend on another tort, and there is no plausible allegation that WCC, Romano, or Geotab committed any tortious or unlawful acts. As to the tortious act, however, Sonrai only needs to allege that "the parties to the agreement committed some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd*., 164 Ill. 2d 54, 63 (1994) (internal citations omitted). The SAC alleges that WCC, Romano, and Geotab implicitly or explicitly agreed to (1) remove Sonrai from the business transaction and (2) avoid paying Sonrai for WCC's continued use of the Vector technology, thereby breaching WCC's agreement with Sonrai. (Dkt. 54 ¶¶ 83-86.) These allegations are sufficient to show that WCC, Romano, and Geotab acted in furtherance of the agreement.

Last, WCC claims there was no explicit agreement between the parties to commit the conspiracy. To plausibly allege conspiracy, Sonrai only needs to plead that there was an agreement

and that each party to the agreement took overt acts related to the conspiracy. *See Mainline Info. Sys., Inc. v. Benkendorf*, 2010 WL 2011618, at *3 (N.D. Ill. May 20, 2010). Sonrai did so by pleading that (1) WCC formed a conspiracy with Romano and Geotab to (2) remove Sonrai from the business transaction and avoid paying for WCC's continued use of Sonrai's Vector technology. (Dkt. 54 ¶¶ 83-86.) For these reasons, Sonrai has adequately pled its conspiracy claim, and WCC's motion to dismiss this claim must be denied.

**B.     The Conspiracy Claim is Not Time Barred.**

If the limitations period for a civil conspiracy claim is governed by the statute of limitations for the underlying tort, then conspiracy's statute of limitations would be based on the DTSA and ITSA claims. Those claims are not time barred, so the civil conspiracy claim is likewise not time barred. As explained above, however, statutes of limitations issues are for another day. *Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 928.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Sonrai Systems, LLC respectfully requests that this Court enter an Order denying Defendant Waste Connections of Canada, Inc.'s Motion to Dismiss the Second Amended Complaint.

Dated: May 2, 2022                              Respectfully submitted,
                                                             /s/ J. Scott Humphrey
                                                J. Scott Humphrey
                                                Manish Mehta
                                                Katie Burnett
                                                Samuel Ruggio
                                                Samantha Roth
                                                **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
                                                71 S. Wacker Dr., Suite 1600
                                                Chicago, Illinois 60606-4637
                                                Telephone: 312-212-4949
                                                Facsimile: 312-767-9192

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 2, 2022, he served a copy of the foregoing on all counsel of record via electronic case filing procedures.

_____/s/ J. Scott Humphrey_____
*One of the Attorneys for Plaintiff*

16