**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SONRAI SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-02575 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WASTE CONNECTIONS OF CANADA, | ) | Honorable John Robert Blakey |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WASTE CONNECTIONS OF CANADA INC.'S
ANSWER AND AFFIRMATIVE DEFENSES**

Defendant Waste Connections of Canada Inc. ("WCC"), by and through its attorneys,

Baker & Hostetler LLP, answers Plaintiff Sonrai Systems, LLC's ("Sonrai's") Second Amended

Complaint (the "SAC") as follows:

**NATURE OF THE CASE[1]**

1.      This case is about theft and corporate greed. Sonrai, a largely family-owned
company, developed proprietary, confidential and game changing products and services in the
waste hauling industry. Waste Connections, a large waste hauling company and part of a large
international conglomerate, saw the value in Sonrai's products and services. Initially, Waste
Connections partnered with Sonrai on using and deploying Sonrai's products and services to Waste
Connections customers.

ANSWER: WCC denies the allegations in the first sentence of this paragraph. WCC lacks

knowledge or information sufficient to form a belief as to the allegations in the second sentence of

this paragraph and therefore denies same. WCC denies the allegations in the third and fourth

sentences of this paragraph but states that WCC is a corporation that operates in the waste hauling

---

[1]     Sonrai's unnumbered headers throughout the SAC constitute organizational breaks in the document to
which no response is required; however, to the extent there are any allegations of factual or legal
nature contained therein, WCC denies such allegations.

industry and that it utilized certain Geotab products sold by Sonrai on certain of its waste collection vehicles.

2.      Unfortunately, after seeing the immense value of Sonrai's products and services, Waste Connections partnered with a rogue former Sonrai employee to steal Sonrai's products and services, and to use Sonrai's products and services for its own benefit and without compensation to Sonrai. Waste Connections also chose to stop honoring its contractual obligations to Sonrai.

ANSWER: Denied.

3.      As a result of the above conduct and as more fully explained below, Sonrai now brings the following claims against Waste Connections: (1) common law civil conspiracy; (2) violation of the Federal Defend Trade Secrets Act; (3) violation of the Illinois Trade Secrets Act and (4) breach of contract. In doing so, Sonrai seeks a) an order enjoining Waste Connections from using Sonrai confidential information; b) an order requiring Waste Connections to return all Sonrai confidential information to Sonrai; c) Sonrai's attorneys' fees and costs as a result of Waste Connections' willful and intentional misappropriation and use of Sonrai confidential information; and d) monetary and exemplary damages for Waste Connections illegal acts.

ANSWER: The allegations of this paragraph are conclusions of law to which no responsive pleading is required. To the extent a response is required, WCC denies the allegations. In addition, this Court has dismissed with prejudice the common law conspiracy claim and limited Sonrai's misappropriation claim to refer only to "Vector."

## THE PARTIES

4.      Sonrai is an Illinois limited liability company with its principal place of business located in Naperville, Illinois. Sonrai is largely comprised of family members and all members are residents of Illinois. Sonrai has extensive experience in equipment manufacturing and waste collection.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

5.      Waste Connections of Canada, Inc. ("Waste Connections") is a Canadian corporation with its principal place of business located in Vaughn, Canada. Waste Connections also has offices in Woodlands, Texas, and several of its officers and directors are located in Woodlands, Texas. In addition, Waste Connections does business in the United States.

ANSWER: WCC denies the allegations in this paragraph but states that it is an Ontario corporation with its principal place of business in Woodbridge, Ontario, Canada.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, because this action involves a claim arising under the laws of the United States, the Defend Trade Secrets Act of 2016, 18 U.S.C. §1832, et seq. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

ANSWER: The allegations of this paragraph are conclusions of law to which no responsive

pleading is required. WCC does not contest jurisdiction in this Court.

7.      This Court also has jurisdiction over this matter pursuant [sic] 28 U.S.C. §§ 1332(a)(1) and 1332(a)(2) because a) Sonrai is an Illinois corporation with its principal place of business in Naperville, Illinois and Waste Connections is a Canadian corporation with its principal place of business in Vaughn, Canada, and b) the amount in controversy for this matter is in excess of $75,000.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to Sonrai's

status and principal place of business. WCC denies the other allegations in this paragraph but states

that it is an Ontario corporation with its principal place of business in Woodbridge, Ontario,

Canada.

8.      Venue is appropriate in the United States District Court for the Northern District of Illinois because Waste Connections conducted business in this District, and a substantial part of the events and omissions giving rise to this cause of action occurred in this District. In addition, Waste Connections' parent company, Waste Connections, Inc. ("WCI"), removed this action from Illinois state court to the United States District Court for the Northern District of Illinois with, upon information and belief, the knowledge and approval of Waste Connections.

ANSWER: WCC does not contest that venue is proper in this Court but denies all

remaining allegations in this paragraph.

## FACTS

## Sonrai is the Technological Leader in the Waste Hauling Industry

9.      Sonrai is a largely family owned information technology company specializing in the waste hauling industry. With over a 100 years of combined experience in the waste hauling industry and a focus on technology, automation and data collection, Sonrai provides its waste hauling customers with a unique experience through its technological services and products. Simply put, and as noted by Waste Connections' own Director of Information Technology Operations Applications, Sonrai's services are a "game changer" in the waste hauling industry, and Sonrai is the "gold standard" when it comes to innovative technology products and services for the waste hauling industry, because Sonrai's products and services allow waste haulers to control their backroom and automation costs through the collection and dissemination of data.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the

allegations in the first and second sentences of this paragraph and therefore denies same. WCC

denies all remaining allegations in this paragraph.

10.     Sonrai uses its knowledge and experience in the waste hauling industry to develop highly confidential and proprietary technological products and services that, among other things, collect data on truck chassis and the waste collection body of a garbage truck. For example, Sonrai has developed its exclusive "event validation system" that, among other things, establishes a computer based visual confirmation that the waste hauling service has been completed in real time on a satellite map to be viewed by the waste hauling truck fleet operator. This system gives the fleet operator benefits in the areas of transit visibility, work order management, dispatch operations, route optimization and tracking, and inventory asset optimization, among other benefits.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the

allegations in this paragraph and therefore denies same.

11.     Sonrai's work in the area of event validation systems has been noted in the waste hauling industry. In fact, and as reported in Forbes Magazine, Sonrai was the recipient of the "sustainable partnership game changer award" for its "strategic plan of sustainable partnerships that would modernize waste and recyclable collection for the 21st century."

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the

allegations in this paragraph and therefore denies same.

12.     Another one of Sonrai's "gold standard" technological products and services is "Vector."

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the allegation in this paragraph and therefore denies same. WCC further denies that the product sold by Sonrai, which it refers to in the SAC as "Vector", is a proprietary technological product or service owned or developed by Sonrai.

13.     Vector is a comprehensive telematics and vehicle information system for the waste hauling industry. Vector enables a waste hauling truck fleet operator to monitor all relevant data from the truck chassis and the waste collection body in nearly real-time. This provides fleet operator benefits with respect to, inter alia, transit visibility, work order management, dispatch operations, route optimization and tracking, inventory asset optimization and service verification.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the allegations in this paragraph and therefore denies same. WCC further states that "Vector" did not operate as Sonrai represented.

14.     The formulas and processes for the development of Sonrai's Vector and RFID technology is only known by a select few of Sonrai's employees. Sonrai does not disclose the formulas and processes for the creation of its technology to third parties.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph and therefore denies same. WCC further states that "Vector" is not a proprietary technological product or service owned or developed by Sonrai.

15.     Sonrai protects the confidential information described in paragraphs 9, 10, and 12, 13, and 14 by, among other things: limiting the disclosure and use of this information to only the Sonrai employees who need this information to perform their duties on behalf of Sonrai; developing and implementing procedures regarding the use and protection of confidential information; obtaining a premier server for the storage of Sonrai confidential information; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access its networks; requiring employees to execute (through its affiliated company ACES) written agreements that protect against the misuse and improper disclosure of Sonrai's confidential information; and entering into confidentiality agreements with companies that will have access to Sonrai's confidential information.

ANSWER: WCC denies that paragraphs 9, 10, 12, 13 and 14 describe confidential information. WCC further denies that it entered into a confidentiality agreement with Sonrai. WCC lacks knowledge or information sufficient to form a belief as to all remaining allegations in this paragraph and therefore denies same.

16. Sonrai receives a financial and economic benefit as a result of the above information being kept confidential and not publicly available. Indeed, and as this Complaint describes in more detail below, a Sonrai competitor would receive a significant economic benefit and other industry advantages if the information was stolen and then used by a competitor.

ANSWER: WCC denies that the SAC describes any confidential information. WCC lacks knowledge or information sufficient to form a belief as to all remaining allegations in this paragraph and therefore denies same.

17. Similarly, a Sonrai competitor could not easily replicate or reengineer the confidential information identified in paragraphs 9, 10, 12, 13 and 14 without incurring significant economic, technological and labor costs.

ANSWER: WCC denies that paragraphs 9, 10, 12, 13 and 14 identify confidential information. WCC lacks knowledge or information sufficient to form a belief as to all remaining allegations in this paragraph and therefore denies same.

### Sonrai Begins Working with Waste Connections

18. As a result of its confidential, proprietary and innovative services and products ("services"), Sonrai began a business relationship with Waste Connections in 2013. At that time, Waste Connections was known as BFI Canada, Inc. ("BFI"). On or about April 1, 2015, BFI changed its name to Progressive Waste Solutions of Canada, Inc. ("Progressive"). After a series of mergers, Progressive eventually became Waste Connections of Canada, Inc. ("Waste Connections"). Consequently, the company that Sonrai did business with was Waste Connections and Waste Connections has acknowledged through counsel to Sonrai that Waste Connections did business with Sonrai and is the appropriate defendant for this matter.

ANSWER: WCC denies the allegations in this paragraph but states that, at the outset of the parties' relationship, Sonrai transacted business with BFI Canada, Inc., which changed its name to Progressive Waste Solutions of Canada Inc. ("PWS Canada") on or around April 1, 2015. After a

merger between entities who are not parties to this litigation, PWS Canada changed its name to Waste Connections of Canada Inc. (WCC herein) in April 2017.

19.     Interested in Sonrai's services, Waste Connections executives came to Sonrai's Chicago-area offices in mid-2013 to determine Sonrai's ability to service Waste Connections' needs. Waste Connections met with Sonrai management, visited Sonrai's offices and saw a demonstration of some Sonrai's products and services in Chicago and Carol Stream, Illinois.

ANSWER: WCC denies the allegations in this paragraph but states that Chuck Palmer and other WCC non-executive personnel met with Sonrai's representatives in mid-2013 in Illinois.

20.     After its on-site meeting with Sonrai in Chicago and Carol Stream, Illinois, Waste Connections included Sonrai on a list of vendors who would be asked to submit a response to Waste Connections' Request For Information ("RFI") relating to its In Vehicle System and Back Office Operations Solutions.

ANSWER: WCC admits that it sent a Request for Information ("RFI") packet to Sonrai but denies all remaining allegations in this paragraph.

21.     On May 30, 2014, Sonrai submitted its Response to Waste Connections' RFI. Sonrai's Response detailed the capabilities of various Sonrai products, including Vector.

ANSWER: WCC denies the allegations in this paragraph but admits that Sonrai submitted a response to WCC's RFI on or around May 30, 2014.

22.     Notably Sonrai did not disclose, and never has disclosed, the formulas and processes for the creation of its Vector and RFID technology to Waste Connections.

ANSWER: WCC denies the allegations in this paragraph but states that "Vector" is not a proprietary technological product or service owned or developed by Sonrai.

23.     Following the submission of Sonrai's Response to Waste Connections' RFI, Waste Connections informed Sonrai that it had made it to the next round of consideration which would involve on-site demonstrations. Waste Connections invited Sonrai to its corporate office in Vaughn, Canada so that Sonrai could provide additional details and a technology demonstration.

ANSWER:  WCC admits the allegations in this paragraph.

24.     In September 2014, after the Sonrai-Waste Connections meeting in Canada, Waste Connections selected Sonrai's Vector system as the system it would install in its trucks to collect the data necessary to meet the requirements imposed upon Waste Connections by a Waste Connections customer, the Region of Peel (a municipality in Canada).

ANSWER: WCC denies the allegations in this paragraph but states that it selected a product sold by Sonrai, which Sonrai calls "Vector", for installation in certain of its waste collection vehicles in the Region of Peel.

25.     Sonrai and Waste Connections also agreed to two "pilot areas" for the rollout of Sonrai's products and services on Waste Connections' vehicles. The pilot areas were Toronto and South Florida.

ANSWER: WCC admits the allegations in this paragraph.

26.     Sonrai met with Waste Connections in mid-November 2014 at its Naperville and Chicago offices to discuss the pilot areas.

ANSWER:  WCC admits that a meeting took place in Naperville, Illinois.

27.     Sonrai and Waste Collections also engaged in negotiations to have Sonrai's Vector system placed in all of Waste Connections' 4,860 trucks. Prior to the placement of Sonrai's products and services in Waste Connections' trucks, Sonrai and Waste Connections conducted tests to aid in the determination of whether Waste Connections would deploy Sonrai's Vector's services, as well as Sonrai's RFID services.

ANSWER:  WCC denies the allegations in this paragraph but states that Sonrai and Waste Connections held discussions regarding installation of products sold by Sonrai in certain of its waste collection vehicles.

28.     Sonrai placed and tested 276 Vector units in Waste Connections trucks at five Waste Connections sites. Sonrai also placed and tested 139 RFID units in Waste Connections trucks at four different Waste Connections sites.

ANSWER: WCC denies the allegations in this paragraph but states that Sonrai installed a product it calls "Vector" and RFID devices in certain of its waste collection vehicles.

29.     Sonrai incurred significant installation and testing expenses as a result of these efforts. Sonrai was only reimbursed for a portion of its expenses by Waste Connections.

ANSWER: Denied.

30.     Waste Connections was pleased with the performance of Vector and RFID. Charles Palmer ("Palmer"), Waste Connections' Director of Information Technology Operations Applications, praised the performance of Sonrai's services and expressed his eagerness to have Sonrai products and services placed in, and used by, all of Waste Connections' trucks.

ANSWER: Denied.

31.     In fact, in a meeting with Sonrai on October 20, 2015 in Vaughan, Ontario, Canada, Palmer declared that Sonrai's services "[are] a game changer; nobody can touch us."

ANSWER:  Denied.

32.     That same day, Palmer proposed the following financial terms for the rollout of Sonrai products and services on all 4,860 of Waste Connections' trucks for a minimum of three years: (1) the Vector device at a price of $246.70; (2) additional hardware including cables at $350 per truck; (3) an installation fee of $75 per truck; and (4) a monthly data fee of $45.29 per truck.

ANSWER: Denied.

33.     Palmer also proposed specific pricing for add-ons to be provided by Sonrai on an as-needed basis, such as inclinometers for the older trucks in Waste Connections' fleet and RFID units.

ANSWER: Denied.

34.     Waste Connections' board of directors approved the terms of the proposed contract for the use of Sonrai's Vector fleet-wide and Waste Connections further stated that it would be drafting a formal contract for execution.

ANSWER: Denied.

35.     Sonrai agreed to the terms put forth by Waste Connections and, as a result, issued invoices in accordance with the terms identified in Paragraph 32. The invoices were signed by Charles Palmer on behalf of Waste Connections. (A sample of the invoices signed by Palmer are attached as Exhibit A).

ANSWER: WCC denies the allegations in this paragraph but states that Charles Palmer

signed certain invoices on behalf of WCC.

36.     The invoices identified, among other things, the number of Vector devices to be used at certain Waste Connections "districts' in the United States and Canada.

ANSWER:  WCC denies the allegations in this paragraph and refers to the invoices for

their terms.

37.     The invoices also identified the usage and data fees for Waste Connections' use of the services provided by Sonrai's confidential information (i.e. Vector).

ANSWER: WCC denies the allegations in this paragraph and refers to the invoices for their

terms. WCC further states that "Vector" did not contain confidential or proprietary information

owned or developed by Sonrai.

38.     Finally, the invoices specifically stated that "by [Waste Connections] acceptance of this order, [Waste Connections] understands that all devices purchased from Seller that are linked to data usage plans ... will have a three (3) year obligation to pay for the data service contract."

ANSWER: WCC denies the allegation in this paragraph and refers to the invoices for their

terms.

39.     In simpler terms, Waste Connections agreed to pay the data service charges for the use of Vector's technology for three years from the first invoice for each Waste Connections district.

ANSWER: Denied.

40.     Based upon the contract executed by Sonrai and Waste Connections, which terms were memorialized in the invoices, Sonrai allowed Waste Connections to review the confidential information housed in Vector so long as Waste Connections paid the usage fees for the Vector service.

ANSWER: WCC denies the allegations in this paragraph. WCC further states that "Vector"

is not a Sonrai product but merely a repackaged system developed by Geotab that Sonrai was not

authorized to sell, and that the information housed on the Geotab system was not confidential or

proprietary information owned or developed by Sonrai.

41.     Put another way, Sonrai granted a license to Waste Connections to use Vector so long as Waste Connections paid for its use of Vector.

ANSWER: Denied.

42.     Consequently, and in reliance upon its agreement with Waste Connections, Sonrai began submitting sales orders and invoices to Waste Connections in May 2014.

ANSWER: WCC denies the allegations in this paragraph but states that Sonrai began submitting invoices to WCC on or around May 2014.

43.     The sales orders covered, among other thing, the charges to Waste Connections for its use of Vector.

ANSWER: WCC denies the allegations in this paragraph and refers to the invoices for their terms.

44.     Waste Connections paid these sales order and invoices through June 2018. Before unilaterally refusing to pay the invoices, Waste Connections paid Sonrai over $950,000 for the use of Vector technology and services.

ANSWER: WCC denies the allegations in this paragraph but states that WCC paid all amounts due to Sonrai.

## Waste Connections Realizes the Value of, and then Steals, Vector

45.     Waste Connections recognized the tremendous value of Sonrai confidential information (i.e. Vector), especially after Waste Connections secured a waste hauling contract for the Region of Peel in Ontario, Canada.

ANSWER: Denied.

46.     Waste Connections worked with Sonrai employee Anthony Romano ("Romano"), who was then Sonrai's Executive Vice President, in the deployment of Sonrai's technology at various Waste Connections customer sites.

ANSWER: WCC denies the allegations in this paragraph but states that it worked with Anthony Romano.

47.     Romano wanted to have an ownership interest in Sonrai and, while working with Waste Connections on the City of Peel opportunity, demanded from Sonrai a 20% ownership interest in Sonrai.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

48.     Romano enlisted the help of Charles Palmer, Waste Connections' Director of Information Technology Operations Applications, to obtain an ownership interest in Sonrai.

ANSWER: Denied.

49.     Specifically, Palmer, in order to help Romano, demanded that Sonrai leaders "give [Romano] 20% of [Sonrai]."

ANSWER: Denied.

50.     Palmer made this demand during the setup of Vector with the Region of Peel and the two (2) pilot programs.

ANSWER: Denied.

51.     Palmer demanded that Romano receive a piece of Sonrai and implied that if Romano did not, then Sonrai's relationship with Waste Connections would be in jeopardy.

ANSWER: Denied.

52.     Romano did not receive an ownership interest in Sonrai and resigned from Sonrai on January 11, 2016.

ANSWER: WCC lacks knowledge or information sufficient to form a belief as to

allegations in this paragraph and therefore denies same.

53.     Following his resignation, Waste Connections hired Romano through Optimum Analytics, LLC, a company Romano formed, as a consultant to assist Waste Connections in implementing a scheme to surreptitiously steal Sonrai's Vector technology.

ANSWER: WCC denies the allegations in this paragraph but states that WCC hired

Anthony Romano as a consultant through Optimum Analytics LLC.

54.     Unbeknownst to Sonrai, Romano, in order to help Waste Connections, surreptitiously accessed Sonrai's portal following his resignation in order to collect data needed to assist Waste Connections in gaining control of the Vector technology Sonrai developed for Waste Connections to use at the Region of Peel and elsewhere.

ANSWER: Denied.

55.     Waste Connections also worked with Romano, after Romano left his employment with Sonrai, in developing and implementing a technology platform that would imitate Sonrai's technology.

ANSWER: Denied.

56.     Waste Connections, with Romano's assistance, also enlisted the help of Geotab, Inc. ("Geotab"), a Canadian company who supplied an ECM device which Sonrai used to support Vector, so Waste Connections could cut Sonrai out of the project and deploy Vector across Waste Connections' entire fleet without having to compensate Sonrai for the use of Vector.

ANSWER: Denied.

57.     As part of its assistance, Geotab gave Waste Connections administrative access to Sonrai's website, which allowed Waste Connections to view route and other information of Sonrai's customers.

ANSWER: WCC denies the allegations in this paragraph but states that Geotab provided

WCC administrative access to WCC's data on Geotab's portal.

58.     Waste Connections was provided such access without the authorization of Sonrai and without Sonrai's knowledge.

ANSWER: WCC denies the allegations in this paragraph but states that, on March 2, 2016,

WCC informed Sonrai that it had received access from Geotab to its data on the Geotab portal.

59.     Waste Connections knew that Sonrai would not give it administrative access to Sonrai's website and that seeking administrative access to Sonrai's website through Geotab would not be approved by Sonrai.

ANSWER: WCC denies the allegations in this paragraph but states that WCC never sought

administrative access to "Sonrai's website." Rather, WCC sought administrative access to its own

data within the Geotab portal.

60.     Nevertheless, Waste Connections obtained access to Sonrai's website through Geotab and, once having gained access to Sonrai's website, Waste Connections changed the access codes and then locked Sonrai out of its own website.

ANSWER: Denied.

**Waste Connections Creates Fictional Complaints and Issues about Sonrai and then Partially Terminates its Relationship with Sonrai**

61.     In order to justify its misconduct in taking over Sonrai confidential information and technology, and to hide its tracks, Waste Connections began lodging system support complaints against Sonrai regarding the accurate reporting of Vector data to purposely cause the relationship between Sonrai and Waste Connections to deteriorate.

ANSWER: Denied.

62.     Sonrai responded immediately to Waste Connections' complaints by meeting with Charles Palmer and by conducting site inspections. While there was a brief period where Sonrai's software was down due to a necessary update of security certificates, Sonrai quickly resolved the issue.

ANSWER:  Denied.

63.     Moreover, the meeting with Palmer and the site inspections revealed that the failure of Sonrai's technology system to accurately report data occurred through no fault of Sonrai. Sonrai observed that the failures were due to a faulty switch, which Waste Connections refused to remedy by adding a new switch that had proven successful with Sonrai's other customers.

ANSWER: Denied.

64.     Nevertheless, and in order to further its scheme to steal Sonrai confidential information, on March 1, 2016, Waste Connections wrote Sonrai, "Effective March 1st, Waste Connections will be supported by the recommended Geotab supplier and will be moving all of our units over to their support program."

ANSWER: WCC denies the allegations in this paragraph and refers to the email quoted in this paragraph, dated March 2, 2016, for its terms.

65.     Although Waste Connections stated that it was terminating its relationship with Sonrai on March 1, 2016, Waste Connections and Sonrai continued to discuss and negotiate their relationship with Sonrai through November of 2017.

ANSWER:  Denied.

66.     The discussions and negotiations between Sonrai and Waste Connections occurred over the phone and in person.

ANSWER:  Denied.

67.     For example, Sonrai and Waste Connections held a meeting on April 4, 2016 to discuss the relationship between Sonrai and Waste Connections. Sonrai also met with Waste Connections in Chicago in October of 2017 to discuss the possibility of moving forward. And an

additional meeting was held between Sonrai and Waste Connections in Houston, Texas on November 4, 2017.

ANSWER: WCC denies the allegations in this paragraph but states that discovery will show the dates on which certain meetings were held. WCC denies that it discussed with Sonrai the possibility of WCC using "Vector" at any time after March 2, 2016.

68. Moreover, Waste Connections continued to pay Sonrai for the right to use Vector through June 2018, in accordance with the agreement Sonrai and Waste Connections had regarding Waste Connections use of Vector's technology, data, and services.

ANSWER: Denied.

69. Notably, at no point in time prior to June, 2018, did Waste Connections claim that it owned Vector or any of the data or technology for Vector.

ANSWER: WCC denies the allegations in this paragraph but states that it has never claimed to own the product Sonrai calls "Vector". WCC further states that on March 2, 2016, WCC informed Sonrai that it had received access to its own data on the Geotab portal.

70. Nor did Waste Connections claim, at any point in time prior to June 2018, that it would keep or use Vector, or had the authority to keep or use Vector, after Waste Connections stopped paying Sonrai for the use of Vector.

ANSWER: WCC denies the allegations in this paragraph but states that WCC was granted administrative access by Geotab to access its own data on the Geotab portal. WCC informed Sonrai of the same on March 2, 2016, and also informed Sonrai that it would begin working with an authorized Geotab reseller and would continue using the Geotab portal.

71. After June 2018, Waste Connections ceased paying Sonrai for its use of Vector and also refused to return the Vector data, technology, and equipment (i.e., Sonrai confidential information) to Sonrai.

ANSWER: Denied.

72.     In other words, after June 2018 and when Waste Connections ceased paying for Vector, Waste Connections misappropriated Sonrai confidential information by retaining and using Vector without Sonrai's permission.

ANSWER: Denied.

73.     As a result of Waste Connections' actions, and with the help of Romano and Geotab, Sonrai confidential information was (and still is) being used by Waste Connections without Sonrai's authorization.

ANSWER: Denied.

74.     Sonrai did not know, however, the extent of Waste Connections misuse of Sonrai confidential information until February 2020.

ANSWER: Denied.

75.     In February 2020, the Region of Peel contacted Sonrai asking for technical help to solve a service problem relating to Vector. The Region of Peel provided Sonrai with passwords which permitted Sonrai to learn that Waste Connections is using Vector throughout Canada and the United States.

ANSWER: WCC denies the allegations in this paragraph concerning WCC. WCC lacks

knowledge or information sufficient to form a belief as the allegations concerning the Region of

Peel and therefore denies same.

**Irreparable Harm to Sonrai**

76.     Injury and harm to Sonrai has occurred and will continue to occur because Waste Connections continues to possess and use Sonrai confidential information without Sonrai's authorization or permission.

ANSWER: Denied.

77.     Similarly, Waste Connections has harmed, and is continuing to harm, Sonrai's legitimate business interests by, inter alia, retaining, misusing, and refusing to return Sonrai confidential information.

ANSWER: Denied.

78.     This is especially true since Sonrai recently learned that Waste Connections is using Sonrai's stolen confidential information throughout the United States and Canada.

ANSWER: Denied.

79.    In addition, Waste Connections can publicly disseminate Sonrai's confidential information that is illegally in Waste Connections' possession, thereby destroying the economic and non-economic benefits Sonrai receives as a result of the confidential information being confidential. Waste Connections can also potentially share Sonrai confidential information with third parties who have no right to see or possess such information, which would also cause additional harm to Sonrai.

ANSWER: Denied.

80.    Hence, Sonrai's confidential information, business interests, and goodwill are at significant risk because Waste Connections misappropriated Sonrai's confidential information.

ANSWER: Denied.

81.    Accordingly, Sonrai is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Sonrai.

ANSWER: Denied.

## COUNT I
### (Common Law Civil Conspiracy)

82.    Plaintiff realleges and incorporates Paragraphs 1 through 81 of this Complaint as though fully set forth herein.

ANSWER: This Count has been dismissed. To the extent a response to this paragraph is required, WCC repeats and realleges its answers as set forth in response to Paragraphs 1 – 81 as set forth above.

83.    Waste Connections colluded with Romano and Geotab to gain control of Sonrai's Vector system and to cut Sonrai out of the plan to deploy Sonrai's Vector technology in Waste Connections' fleet of disposal trucks.

ANSWER: This Count has been dismissed. To the extent a response to this paragraph is required, denied.

84.    Waste Connections carried out its scheme in part by employing Romano as a consultant to assist in the surreptitious implementation of Sonrai's Vector system at the Region of Peel. Through its relationship with Romano and Geotab, Waste Connections obtained improper access to Sonrai's confidential information.

ANSWER: This Count has been dismissed. To the extent a response to this paragraph is required, denied.

17

85.     Geotab improperly granted Waste Connections administrative access to Sonrai's website which permitted Waste Connections to take control of the website, lock Sonrai out of its own technology, and use that technology without paying Sonrai.

ANSWER: This Count has been dismissed. To the extent a response to this paragraph is required, denied.

86.     Sonrai has incurred damage as a result of Waste Connections' unpaid use of Sonrai confidential information (i.e. Vector).

ANSWER: This Count has been dismissed. To the extent a response to this paragraph is required, denied.

## COUNT II
### (Violation of the Defend Trade Secrets Act 18 USCS § 1832)

87.     Plaintiff realleges and incorporate Paragraphs 1 through 86 of this Complaint as if fully set forth herein.

ANSWER: WCC repeats and realleges its answers as set forth in response to Paragraphs 1 – 86 as set forth above.

88.     During the course of its relationship with Sonrai, Waste Connections was provided access to substantial amounts of Sonrai confidential information, including the confidential information identified in Paragraphs 9, 10, 12, 13, 14, 19 and 22.

ANSWER: Denied.

89.     This information is not available to the general public and is closely guarded by Sonrai. Sonrai keeps such information strictly confidential in order to protect and maintain its competitive advantage. The economic value of this information is over $1,000,000.

ANSWER: Denied.

90.     Sonrai confidential information, including the confidential information identified in Paragraphs 9, 10, 12, 13, 14, 19 and 22, is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1832, et seq. ("DTSA"), because the information is not generally known outside of Sonrai; the information is not generally known by employees and others involved in Sonrai's business except for those who need the information to perform their job function; Sonrai has taken reasonable measures to guard the secrecy of the information; the information is of great value to Sonrai; Sonrai invested significant amounts of time and money in developing the information; the

information cannot easily be acquired or duplicated by others; and because Sonrai uses the information in its business.

ANSWER: Denied.

91.     Waste Connections was legally and contractually obligated to return Sonrai confidential information to Sonrai when it ceased paying for the right to access and use Sonrai confidential information in June 2018.

ANSWER: Denied.

92.     Waste Connections knew that, after it stopped paying for the right to access and use Sonrai confidential information in June 2018, it was no longer authorized to receive, possess, or access Sonrai confidential information.

ANSWER: Denied.

93.     Unfortunately, Waste Connections ignored (and continues to ignore) its obligations to Sonrai and misappropriated Sonrai's confidential information in June 2018 (i.e. after it stopped paying for the right to use Sonrai confidential information and refused to return the confidential information).

ANSWER: Denied.

94.     In addition and based upon information and belief, Waste Connections engaged in other acts of misappropriation that will be revealed through discovery.

ANSWER: Denied.

95.     Unless restrained, and based upon the activity described above, Waste Connections will continue to use, divulge, and/or disclose Sonrai confidential information.

ANSWER: Denied.

96.     It is axiomatic that if Waste Connections continues to possess Sonrai confidential information, then Waste Connections has no intention of complying with the DTSA.

ANSWER: Denied. WCC has not violated the DTSA.

97.     Consequently, Waste Connections' actions constitute the actual misuse of Sonrai confidential information. Injunctive relief against Waste Connections is therefore appropriate.

ANSWER: Denied.

98.     Naturally then, Sonrai requests an order enjoining Waste Connections from accessing, using, or possessing Sonrai confidential information.

ANSWER: The allegation in this paragraph is a prayer for relief to which no response is required. To the extent a response is required, denied.

99.     Sonrai also requests an order requiring Waste Connections to return any and all Sonrai confidential information to Sonrai as provided by 18 U.S.C. § 1836(3)(A)(ii).

ANSWER: The allegation in this paragraph is a prayer for relief to which no response is required. To the extent a response is required, denied.

100.     In addition, Sonrai has incurred significant damages as a result of Waste Connections' misappropriation of Sonrai trade secrets.

ANSWER: Denied.

101.     For example, Sonrai was prevented by the misconduct of Waste Connections from reaping the benefits of the success of Vector.

ANSWER: Denied.

102.     Waste Connections' actions have also damaged Sonrai's goodwill, reputation, and legitimate business interests. Sonrai's damages, described above, are well in excess of $75,000.00, and Sonrai seeks monetary and economic damages provided by 18 U.S.C. § 1832 et seq.

ANSWER: Denied.

103.     Finally, Waste Connections' misappropriation of Sonrai confidential information has been willful and malicious. As a result, Sonrai is entitled to recover its attorneys' fees from Waste Connections.

ANSWER: Denied.

**COUNT III**
**(Violation of Illinois Trade Secrets Act 765 ILCS 1065/4)**

104.     Plaintiff realleges and incorporates paragraphs 1 through 103 of this Complaint as if fully set forth herein.

ANSWER: WCC repeats and realleges its answers as set forth in response to Paragraphs 1 – 103 as set forth above.

20

105.     During the course of its relationship with Sonrai, Waste Connections was exposed to substantial amounts of Sonrai confidential information, including the confidential information identified in Paragraphs 9, 10, 12, 13, 14, 19 and 22.

ANSWER: Denied.

106.     This information is not available to the general public and is closely guarded by Sonrai. Sonrai keeps this information strictly confidential in order to maintain a competitive advantage over its competitors.

ANSWER: Denied.

107.     This information is considered a trade secret under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/et al., because Sonrai derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

ANSWER: Denied.

108.     The economic value of the Sonrai trade secrets/confidential information that Waste Connections had access to and misappropriated is over $1,000,000.

ANSWER: Denied.

109.     Waste Connections misappropriated Sonrai trade secrets in June 2018.

ANSWER: Denied.

110.     Based upon information and belief, Waste Connections also engaged in other acts of misappropriation that will be revealed through discovery.

ANSWER: Denied.

111.     Injunctive relief is therefore appropriate, and Sonrai requests that this Court enter an order enjoining Waste Connections from using, possessing, or accessing any Sonrai confidential information and from disclosing Sonrai confidential information to anyone not authorized to receive the confidential information.

ANSWER: The allegation in this paragraph is a prayer for relief to which no response is required. To the extent a response is required, denied.

112.    Sonrai also requests that this Court enter an order requiring Waste Connections to return any and all Sonrai confidential information.

ANSWER: The allegation in this paragraph is a prayer for relief to which no response is

required. To the extent a response is required, denied.

113.    Sonrai has incurred significant damages as a result of Waste Connections' misappropriation of Sonrai trade secrets.

ANSWER: Denied.

114.    For example, Sonrai was prevented by the misconduct of Waste Connections from reaping the benefits of the success of Vector.

ANSWER: Denied.

115.    Waste Connections actions have also damaged Sonrai's goodwill, reputation, and legitimate business interests. Sonrai's damages, described above, are well in excess of $75,000.00, and Sonrai seeks monetary and economic damages provide by 765 ILCS at § 1065/1 et al.

ANSWER: Denied.

116.    Finally, Waste Connections' misappropriation of Sonrai confidential information has been willful and malicious. As a result, Sonrai is entitled to recover its attorneys' fees from Waste Connections.

ANSWER: Denied.

## COUNT IV
### (Breach of Contract)

117.    Plaintiff realleges and incorporates Paragraphs 1 through 116 of this Complaint as though fully set forth herein.

ANSWER: WCC repeats and realleges its answers as set forth in response to Paragraphs 1

– 116 as set forth above.

118.    As identified in the invoices, Sonrai and Waste Connections had an agreement whereby Sonrai would provide Waste Connections with Vector and, in exchange, Waste Connections would pay Sonrai for the Vector device, usage, and data fees for Waste Connections' use of the data and information contained in Vector.

ANSWER: Denied.

119.    Waste Connections agreed to pay usage and data fees for Vector for three years.

ANSWER: Denied.

120.    Sonrai has performed all of the duties and obligations it owes under the contract.

ANSWER: Denied.

121.    Waste Connections, however, has not complied with the duties and obligations it owes under the contract.

ANSWER: Denied.

122.    Specifically, Waste Connections breached the contract by not returning the Vector devices and not paying all of the usage and data fees it owes Sonrai.

ANSWER: Denied.

123.    Prior to March 1, 2018, Waste Connections failed to pay Sonrai $311,218.66 in usage and data fees. (A summary of the owed fees prior to March 1, 2018 is attached as Exhibit B).

ANSWER: Denied.

124.    From March 1, 2018 to March 1, 2020, Waste Connections failed to pay Sonrai $354,119.21 in usage and data fees.

ANSWER: Denied.

125.    According [sic], Sonrai's total damages arising out of Waste Connections' breach of the contract between Sonrai and Waste Connections is $665,337.87.

ANSWER: Denied.

126.    In addition, Sonrai is entitled to pre-judgment interest at a rate of 5% per annum.

ANSWER: Denied.

127.    Sonrai demands a jury trial.

ANSWER: The allegation in this paragraph is a prayer for relief to which no response is required. To the extent a response is required, denied.

WHEREFORE, Plaintiff Sonrai Systems, LLC requests that this Court:

a)     Enter an injunction enjoining and restraining Waste Connections, and all those acting in concert or participation with it, from using, possessing, disclosing, or having access to any Sonrai confidential information;

b)     Enter an order requiring Waste Connections to return all Sonrai confidential information to Sonrai;

c)     Award Sonrai its attorneys' fees and costs as a result of Waste Connections' willful and intentional misappropriation and use of Sonrai confidential information;

d)     Award Sonrai monetary damages based upon Waste Connections' misconduct;

e)     Award Sonrai such other relief as the Court may deem just and proper.

ANSWER: This paragraph, and subparagraphs "(a)" through "(e)" therein, is Sonrai's "Prayer for Relief" to which no response is required; however, to the extent there are any allegations of factual or legal entitlement to the relief requested, WCC denies such allegations. Sonrai is not entitled to judgment or to any relief, requested or otherwise.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters where that burden rests on Sonrai, WCC asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Second Count (alleged violation of the DTSA) and Third Count (alleged violation of the ITSA (collectively, the "Trade Secrets Claims") are barred because Sonrai did not own, develop or control any allegedly misappropriated trade secrets.

## THIRD AFFIRMATIVE DEFENSE

The Trade Secrets Claims are barred because Sonrai did not take reasonable measures to maintain the secrecy of information it claims was confidential.

### FOURTH AFFIRMATIVE DEFENSE

The Trade Secrets Claims are barred because Sonrai did not require WCC to sign a confidentiality agreement prohibiting the disclosure of information it claims was confidential.

### FIFTH AFFIRMATIVE DEFENSE

The Trade Secrets Claims are barred because WCC did not misappropriate any confidential information and/or trade secret by improper means or otherwise.

### SIXTH AFFIRMATIVE DEFENSE

The Trade Secrets Claims are barred because WCC did not disclose any alleged confidential information and/or trade secrets to anyone.

### SEVENTH AFFIRMATIVE DEFENSE

The Trade Secrets Claims are barred because Sonrai has not identified any confidential information and/or trade secrets.

### EIGHTH AFFIRMATIVE DEFENSE

The claim asserted under the DTSA is barred because the DTSA does not apply to acts that occurred outside the United States.

### NINTH AFFIRMATIVE DEFENSE

The claim asserted under the ITSA is barred because the events at issue did not occur substantially and primarily in Illinois.

### TENTH AFFIRMATIVE DEFENSE

The Trade Secrets Claims were brought and maintained in bad faith. To the extent WCC prevails, it will be entitled to recover its attorneys' fees.

### ELEVENTH AFFIRMATIVE DEFENSE

The breach of contract claim is barred because Sonrai has not identified a contract between itself and WCC governing the subject matter.

### TWELFTH AFFIRMATIVE DEFENSE

The breach of contract claim is barred by the statute of frauds.

### THIRTEENTH AFFIRMATIVE DEFENSE

The breach of contract claim is barred because WCC did not breach any alleged agreement or contract between Plaintiff and WCC.

### FOURTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred because Sonrai did not suffer any damages a result of any action taken by WCC.

### FIFTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by the applicable statute of limitations.

### SIXTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by the doctrine of latches and/or waiver.

### SEVENTEENTH AFFIRAMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by the doctrine of estoppel.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by the doctrine of unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by the doctrine of unjust enrichment.

## TWENTIETH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by Sonrai's failure to join required and/or indispensable parties.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred by Sonrai's failure to mitigate its alleged damages.

## RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

WCC has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. WCC reserves the right to amend or seek to amend its Answer and Affirmative Defenses.

Dated:  March 28, 2023

/s/ Daniel J. Buzzetta
Daniel J. Buzzetta
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200 (phone)
(212) 589-4201 (fax)
dbuzzetta@bakerlaw.com


David M. Friebus
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
dfriebus@bakerlaw.com

*Attorneys for Defendant*
*Waste Connections of Canada Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on March 28, 2023, he filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

/s/ Daniel J. Buzzetta<br>
Daniel J. Buzzetta