IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SONRAI SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-CV-02575 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WASTE CONNECTIONS OF CANADA, INC., | ) | Honorable John Robert Blakey |
| | ) | |
| | ) | Magistrate Judge Sheila M. Finnegan |
| Defendant. | ) | |

**PLAINTIFF SONRAI SYSTEMS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT'S PETITION FOR AN AWARD OF SPECIFIC FEES**

Plaintiff, Sonrai Systems, LLC ("Plaintiff") or ("Sonrai"), by and through its counsel, submits the following in opposition to Defendant Waste Connections of Canada. Inc.'s ("Defendant" or "Waste Connections") Petition For An Award of Specific Fees ("Petition") (Dkt. 145) relating to its Response to Sonrai's Motion to Compel (Dkt. 122). Sonrai respectfully requests a reduction of WCC's fees to $7,584.38, or at least a reduction of their requested fees by half. In support hereof, Sonrai states as follows:

**INTRODUCTION**

This Court ordered that "Sonrai must pay the **reasonable** expenses, including attorney's fees, that Waste Connections incurred in opposing this motion as to the following topics: (1) Sonrai's request for a discovery conference . . . (2) Sonrai's request for immediate production . . . and (3) Sonrai's request to inspect the Geotab portal . . . The circumstances surrounding the other issues do not merit an award of expenses against Sonrai." (Dkt. 140 at 12-13) (emphasis added). WCC contends it is entitled to $21,278.31—consisting of **four attorneys'** time and **32 hours** of time—for writing its **eight**-page Response in Opposition to Sonrai's Motion to Compel (Dkt. 122)

1

("Response"). WCC also contends that it is entitled to an additional $4,294.50 for its seven-page fee petition. Yet, the key word in the Court's order is *reasonable*, and little about WCC's fee petition is reasonable. WCC neither exercised billing judgment in writing its Response nor provided sufficient evidence in its petition that the fees billed *and* time spent writing the Response are reasonable. For these reasons, the Court should reduce WCC's request for fees to $7,584.38, or at least a reduce its total requested fees by half to $12,786.41. In the alternative, Sonrai requests that this Court deny WCC's request for the fees incurred in preparing its seven-page fee petition.

## LEGAL STANDARD

Before submitting a fee petition, WCC is expected to exercise reasonable "billing judgment" in calculating its fees by eliminating charges that are redundant, excessive, or otherwise unnecessary." *Harper v. City of Chicago Heights*, 1994 WL 710782, at *2 (N.D. Ill. Dec. 16, 1994); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983). WCC also has the burden to establish in its petition that all of the fees it seeks are **reasonable**. *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 552–53 (7th Cir. 1999). WCC has done neither.

## ARGUMENT

**A. WCC is Only Entitled to Recover Fees for Three Sections of its Response.**

The Court ordered Sonrai to pay WCC's fees for certain sections of its Response, which in total amount to approximately half of WCC's Response. Specifically, the Court granted WCC's request for fees in preparing its opposition to (a) Sonrai's request for a discovery conference; (b) Sonrai's request for immediate production; and (c) Sonrai's request to inspect the Geotab portal. (Dkt. 140 at 12-13.) WCC's brief is a total of eight pages, and the three sections addressing these issues amount to (at most) three pages of the eight pages of the brief. For example, the Response section responding to Sonrai's request for a discovery conference consists of (at the very most)

2

one page. (Dkt. 122 at 8-9.) The Response section responding to Sonrai's request for immediate production consists of (at most) one-half of a page. (*Id.* at 4.) The Response section addressing Sonrai's request to inspect the Geotab portal, consists of (at most) one page. (*Id*. at 5-6.) Then, WCC's introduction addressing these issues consist of an additional one-half page. (Dkt. 122 at 2.) These sections total three pages.

The remaining five pages consist of (a) WCC's response to Sonrai's motion to compel its Rule 30(b)(6) topics; (b) WCC's summary of Sonrai's purported "delays"; (c) WCC's argument that there was no Rule 37.2 certification; (d) its fee request; (e) the remainder of the introduction; and (f) the conclusion. The Court explicitly stated that "[t]he circumstances surrounding the other issues"—i.e. these six sections—do not merit an award of expenses against Sonrai." (Dkt. 140 at 13.) Put another way, WCC is not entitled to any recovery of fees for any Response sections, other than those explicitly awarded by the Court, which total less than half of the Response. Nonetheless, during negotiations with WCC regarding its total purported fees,[1] Sonrai rounded up and stated that WCC was not entitled to more than 5/8 of its fees in an attempt to compromise. (Sonrai maintains that position in this opposition even though it believes 5/8 is very generous.)

WCC contends, however, that it should be entitled to 5/6 of the fees it incurred by drafting its Response. (Dkt. 145 at 5.) For support, WCC claims that the section responding to Sonrai's motion to compel its 30(b)(6) deposition topics (for which WCC was not awarded fees) consists of one-sixth of WCC's Response. (*Id.*) This assertion is technically true, in that the 30(b)(6) topics

---

[1] WCC violated Federal Rule of Evidence 408 by submitting these negotiations to the Court. (Dkt. 145-2 and 145-3.) *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F.Supp.2d 878, 881 (N.D. Ill. Nov. 16, 2005) (stating that "the plain and unambiguous text" of Rule 408 prohibits evidence of settlement discussions used to prove the validity or invalidity of a claim or amount). Nonetheless, Exhibit B to WCC's Petition emphasizes that WCC has at no time provided any justification for its requested fees. Meanwhile, Sonrai provided a justification for its reduction and attempted to resolve the issue without Court intervention.

3

section accounts for one of the six sections in the Response argument. But WCC is not then automatically entitled to fees it incurred in its other five Response argument sections. Indeed, the Court explicitly stated that WCC was only entitled to recovery for two-and-a-half of the six sections. (Dkt. 140 at 12-13.) WCC also does not address the fees it incurred in drafting the one-and-a-half page introduction, request for fees, or sections about Sonrai's purported discovery delays. In other words, WCC's approach inappropriately includes in its Petition fees expended for aspects of the Response for which the Court explicitly stated WCC could not recover.

WCC cites *Rexam Beverage Can Co. v. Bolger*, which praised the district court's employment of a "practical solution" to "fee division problem[s]." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 739 (7th Cir. 2010). In *Rexam*, the district court restricted the award to include only the compensable fees and excluded the non-compensable fees. Similarly, the "practical solution" here is to award fees only for the parts of WCC's Response that are compensable, i.e. those that the Court ordered are recoverable. And the appropriate approach for measuring which aspects of the brief are recoverable is total pages per section. Practically speaking, the length of each section likely correlates with the time spent on each section. *Heneghan v. City of Chicago*, No. 09 C 0759, 2010 WL 3715142, at *2 (N.D. Ill. Sept. 14, 2010) (finding five hours spent by a first-year associate on a an eight-page motion to compel was reasonable); *Jordan v. Brady,* No. 92 C 2229, 1993 WL 189803, at *4 (N.D. Ill. June 3, 1993) (awarding 7.5 hours spent drafting a collective 30 pages for a motion and reply brief as reasonable). Thus, the appropriate measure of fees should not exceed five-eighths of the total fees incurred by WCC in drafting the Response.

**B. WCC's Hourly Rates are Excessive and should be Reduced.**

District courts have broad discretion in determining the amount of a fee award. *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). This Court should use its discretion to reduce WCC's hourly rates. The rates of $1,125 for Daniel Buzzetta (Partner), $590 for Andrew Samuels (Partner), $935 for Cameron Friedman (Associate), and $380 for Kevin Lissemore (Associate) are excessive and not supported by sufficient evidence. Therefore, it is not reasonable to assess those fees against Sonrai.

Courts in this district use the lodestar method for determining reasonable fees, which entails determining the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The first step in determining the lodestar is to address the reasonableness of the attorneys' hourly rate. A reasonable hourly rate is based on the local market rate for the attorney's services. *Montanez*, 755 F.3d at 553 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011)). Fee petitioners carry the burden of supplying "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) (petitioner bears the burden of "produc[ing].") If the rates actually charged to clients cannot be or are not established, "the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Brzowski v. Sigler*, No. 17 C 9339, 2021 WL 4283206, at *3-4 (N.D. Ill. Sept. 21, 2021) (citing *Montanez*, 755 F.3d at 553).

WCC carries the burden of establishing that the hourly rates that WCC purportedly charges are reasonable, and it has failed to do so in this case. WCC fails to (a) produce evidence that its rates are comparable to the local market rate; and (b) produce evidence that BakerHostetler actually

5

charged WCC its purported rates to WCC. For example, WCC's strongest support is the affidavit of Daniel Buzzetta. (Dkt. 145-5.) Self-serving affidavits alone, however, "cannot establish the market rate for that attorney's services." *Harper*, 223 F.3d at 604. Instead, such affidavits are sufficient to satisfy a fee petitioner's burden when submitted "in conjunction with other evidence of the rates charged by comparable lawyers." *Id.* The remainder of the evidence presented by WCC does not support its hourly rates.

WCC also references a February 2024 Thomson Reuters study, which WCC uses to show that WCC's purported rates are reasonable. The rates referenced by WCC and in the article refer to firms' *standard rates*, rather than the worked rates. (Dkt. 145-5 at 3) ("If law firms were, in fact, raising rates, such a trend would show up not only in worked rates, but in a different metric known as *standard rates*."). Moreover, the article shows only that law firms' standard rates have increased in theory over time, but does not provide concrete examples of what rates are applied in *practice.*

Further, WCC fails to supply evidence that similar rates are paid in *this* market—rather than nationally—and that BakerHostetler is paid its purported rates by similar clients.[2] *Spegon*, 175 F.3d at 555 (7th Cir. 1999) (courts are to employ the prevailing market rate that lawyers of similar ability and experience in this community charge their paying clients, not a national rate); *Chicago Polce Officers FICO*, 931 F. Supp. 2d 869, 875 (N.D. Ill. 2013) (M.J. Finnegan) (noting

---

[2] In fact, recent cases involving BakerHostetler lawyers suggest the opposite. For example, in *Deakin v. Magellan Health, Inc.*, No. 1:17-CV-00773-MLG-KK, 2024 WL 4333198 (D. N.M. Sept. 27, 2024), Mark Temple (Houston, TX) and Justin Guilfoyle (NYC) of BakerHostetler asserted that they had high standard rates, but actually billed their client at rates of $525 and $315 respectively. Then, in *Ottaway v. REV Recreation Grp., Inc.*, No. 1:16-CV-162, 2020 WL 13555571, at *3 (N.D. Ind. Oct. 16, 2020), BakerHostetler attorneys advocated *against* a petitioner's request for $500 per hour, noting that petitioner's affidavits did not state that petitioner's rates are comparable to market rates in the community.

petitioner failed to identify cases he personally handled, what rate he received for them, or rates awarded to other similar attorneys within the relevant community). WCC cites *Phillips v. Help at Home, LLC*, No. 15-8954, 2019 WL 13255559, at *3 (N.D. Ill., Feb 11, 2019) (Finnegan, M.J.) and *Teledyne Tech., Inc. v. Shekar*, No. 15-1392, 2017 WL 5892251, at *2 (N.D. Ill. Apr. 27, 2017), but those cases actually support lower rates. In those cases, the fees awarded ranged from $325 to $605, which are much more reasonable hourly rates than those proposed by WCC.

Worse yet, WCC has not asserted once in its Petition or the accompanying exhibits that the rates sought by WCC were **actually incurred by WCC**. To the contrary, WCC avoids making such claim by stating that: "Exhibit C is a true and correct copy of a redacted invoice submitted to Waste Connections in July 2024 detailing time billed by BakerHostetler attorneys… The rates charged are fixed customary rates for work performed for Waste Connections." Dkt. 145 at ¶ 5. Exhibit C, however, contains redactions that cover the rates actually charged by BakerHostetler to WCC. Thus, not once in either WCC's Petition or the exhibits does counsel for WCC plainly state that the hourly rates it purports were actually charged to WCC. In other words, WCC artfully avoided making any statement that WCC pays $1,125 per hour for Daniel Buzzetta, $590 for Andrew Samuels, $935 for Cameron Friedman, and $380 for Kevin Lissemore.

When fee petitioners fail to submit sufficient evidence, courts may set the reasonable rate based on rates within the community, i.e. within this jurisdiction. *Brzowski*, 2021 WL 4283206, at *3-4 (stating when a petitioner provides insufficient evidence to support their requested rates, the Court must independently determine the attorneys' appropriate rates) (citing *Montanez*, 755 F.3d at 553)); *Sughayyer v. City of Chicago*, No. 09 C 4350, 2012 WL 2359065, at *8 (N.D. Ill. June 20, 2012) (M.J. Finnegan) (setting the hourly rate where the petitioner did not "submit[] any invoices indicating that clients customarily pay Mr. Lopez $600 per hour for his work, nor has

[petitioner] directed the Court to any cases where he has been awarded a similar rate"). Recent cases in this district dictate that the rates counsel for WCC claims exceed what is typically awarded in this district. *See Rodesky v. Pfister*, 2023 WL 2585856, at *5 (C.D. Ill. Feb. 21, 2023), *appeal dismissed sub nom. Rodesky v. Jeffreys*, 23-1403, 2023 WL 5608424 (7th Cir. Apr. 19, 2023) (attorney rates reduced from $750 to $450 is appropriate); *Brzowski*, 2021 WL 4283206, at *4-5 (awarding $465 per hour to an attorney with thirty-one years of experience); *Hangzhou Aoshauang E-Commerce Co., Ltd. V. 008Fashion*, 336 F.R.D. 154, 160 (N.D. Ill. July 24, 2020) (finding rates of $325 and $400 per hour reasonable); *Cooper v. City of Chicago*, No. 16 C 3519, 2018 WL 3970141, at *15-16 (N.D. Ill. Aug. 20, 2018) (awarding an attorney with 22 years of experience $475 per hour); *Teledyne*, 2017 WL 5892251, at *3 ($441.00 per hour for attorneys is reasonable); *Montanez*, 755 F.3d at 554 ($175 and $385 per hour were reasonable rates).

Accordingly, counsel for WCC's hourly rates should be adjusted downward so that it is consistent with recent case law. Based on the above case law, reasonable hourly rates are $465 for Daniel Buzzeta, $385 for Andrew Samuels, $380 for Cameron Friedman, and $175 for Kevin Lissemore. This Court can and should implement such reduced rates.

**C. The Hours Billed On The 8-page Response Brief Are Unreasonable.**

Under the lodestar method for attorneys' fees, once a reasonable hourly rate is determined, the Court must then analyze the number of hours expended. *Kurgan v. Chiro One Wellness Centers, LLC*, No. 10–cv–1899, 2015 WL 1850599, at *3 (N.D. Ill. Apr. 21, 2015) (citing *Hensley*, 461 U.S. at 433). WCC claims that its "attorneys spent 31.8 hours research and preparing" its response to Sonrai's motion to compel. (Dkt. 145 at 4.) In the next breath, they state that this time produced an "eight-page memorandum of law and three-page declaration." (*Id*.) These numbers do not add up. More than thirty hours for an eight-page brief is rarely if ever reasonable regardless

8

of the brief's content. And WCC provides no justification for spending 31.8 hours on the Response.

By WCC's own admission, Dan Buzzetta has more than *thirty* years' experience, and two of the remaining three attorneys who contributed to the Response have *eleven* years' experience. Not only does such assertion fail to explain why 32 hours were necessary for its Response, it is inconceivable that these very experienced attorneys would need a collective 32 hours between them for a simple eight-page response brief with minimal case citations. Indeed, most of the Response brief consisted of a recitation of the parties' meet and confer efforts, in which two of the four attorneys (Cameron Friedman and Andrew Samuels) actively participated. Again, WCC *admits* that "this matter is one of [Buzzetta's, Samuel's, and Friedman's] primary matters to which they devote substantial time each month and, as a result, they are unable to work on other matters." (Dkt. 145-1 at ¶ 12.) Accordingly, drafting the content of the Response brief—which was neither novel nor responded to novel issues—should have been simple, straightforward, and inexpensive. WCC also does not explain why it was necessary for three very senior attorneys—rather than a junior attorney with supervision from a senior attorney—to draft the Response. Regardless, 32 hours—or four hours per page—is disproportionate to what was required by the Response, and Sonrai should not be responsible for paying for three very senior attorneys' work on an uncomplicated Response. *Chicago Polce Officers FICO*, 931 F. Supp. 2d 869, 875 (N.D. Ill. 2013) (M.J. Finnegan) (noting that it was "excessive" for two partners to perform the same tasks on an issue that "was not so complicated or large as to justify having more than one partner"); *Sughayyer*, 2012 WL 2359065, at *7 (M.J. Finnegan) (noting that "the Court is not persuaded that this case was either so complicated or large to justify three trial attorneys" and "[i]t would have

9

been reasonable in this particular case to have two trial lawyers—a senior lawyer assisted by someone more junior and lower-priced—along with a paralegal.").

Perhaps for the reasons stated above, several of the entries appear to be unnecessary and/or duplicative. This is not an instance of a senior attorney or two revising a junior attorney's work. Instead, WCC's Petition and accompanying invoices reflect two partners and a senior associate repeatedly editing *each other*'s work. Not only are such entries unnecessary—and do not warrant ordering Sonrai to pay them—but at least some of the billing entries on Exhibit C are undoubtedly duplicative. For example, Andrew Samuels spent a total of 9.6 hours drafting the Response between July 5, 2024 and July 13, 2024, while Cameron Friedman spent a total of 10.7 hours drafting the Response between July 11, 2024 and July 16, 2024—that is an overlap of two days where both attorneys were billing time to drafting and revising the Response. (Dkt. 145-4 at 6-10.) Then, on July 5 and between July 13 and July 14, 2024, all three attorneys billed time to discussing and revising the eight-page Response. (Dkt. 145-4 at 8-9.) Sonrai should not be ordered to pay for multiple attorneys performing the same work. *Montanez*, 755 F.3d at 555 (affirming the disallowance of time spent by two partners simultaneously when one party was enough on a straightforward case); *Cooper*, 2018 WL 3970141, at *14 (noting that redundant or repeated efforts between multiple entries is not reasonable).

Courts in this district expect fee petitioners to make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. *See also Teledyne*, 2017 WL 5892251, at *3 (stating a fee applicant should exercise billing judgment with respect to hours worked). WCC failed in this regard. Thus, this Court may set a reasonable time frame for such motion in its discretion. *See, e.g., Brzowski*, 2021

10

WL 4283206, at *2 (courts are "obliged to exclude" from petitioner's calculation hours that "were not reasonably expended on litigation."). Cases in this district court have found that between five and ten hours for similar work is reasonable. *Phillips*, 2019 WL 13255559, at *3 (Finnegan, M.J.) (awarding sanctions totaling $2,609.50 for 5.1 attorney hours spent preparing a motion for sanctions); *Payton v. Kale Realty, LLC*, No. 1:13-cv-08002, 2015 WL 10374103, at *8 (N.D. Ill. Aug. 20, 2015) (Finnegan, M.J.) (awarding 9.2 hours of a partner's time spent drafting a motion for contempt but at an associate rate of $400 per hour, or $3,680 total); *Heneghan*, 2010 WL 3715142, at *2 (finding five hours spent by a first-year associate on an eight-page motion to compel was reasonable).

*Finally,* WCC cited **zero** cases in the sections of its Response for which WCC is entitled to recover fees. *Arrington v. La Rabida Children's Hosp.*, 2007 WL 1238998, at *3 (N.D. Ill. Apr. 25, 2007) (reducing hours requested in preparing a motion to compel that was three pages long and cited no case law); *Mattenson v. Baxter Healthcare Corp.*, 2003 WL 22317677, at *1 (N.D. Ill. Oct. 9, 2003) (finding a downward adjustment was necessary when the motion lacked complexity and did not cite to case law). Sonrai should not be held responsible for any "research" WCC conducted outside of the three sections of its Response for which it is entitled to fees. Thus, any research conducted "regarding recoverability of attorneys' fees" or to the extent any other research is baked into the other attorneys' entries should not be billed to Sonrai. (Dkt. 145-4 at 8.)

For these reasons, a downward adjustment is warranted. The 32 hours WCC contends it spent on its uncomplicated, straightforward Response brief should be reduced to a reasonable five to ten hours.

11

**D. WCC is Not Entitled to its Fees in Bringing this Petition.**

WCC has not established that its request for payment of the fees it incurred in bringing its Petition should be paid by Sonrai. District courts have discretion to award attorneys' fees related to a fee petition. *Nichols v. Ill. Dept. Transp.*, 4 F.4th 437, 444 (7th Cir. 2021) (finding the district court did not abuse its discretion to deny fees for the fee petition litigation). If the initial fees counsel attempted to recover were excessive or unreasonable, courts can disallow such fees requested in preparing and defending the fee petition. *Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir. 1982) (denying a request to recover fees expended to prepare and defend a fee petition because the fee claims were "exorbitant," and the time devoted to presenting them was "unnecessarily high"). As illustrated in depth above, the rates that WCC purports it charges WCC are exorbitant, and the hours they proffer are unnecessarily high. This court should, therefore, deny WCC's request for the fees it incurred in bringing this petition, or at a minimum, reduce the hours and rates.

Even if the Court determines WCC is entitled to attorneys' fees related to their fee petition, the amount requested should be greatly reduced. Courts reduce the amount of time recoverable for preparing a fee petition if it is disproportionate to the time spent on the case's merits. *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill July 6, 2012) (citing *Spegon*, 175 F.3d at 554). The relevant inquiry is "whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon*, 175 F.3d at 554 (citing *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988) (finding that spending fifteen minutes preparing their fee petition for every hour spent litigating on the merits, or a ratio of 15%, was excessive)). WCC relies on *Spegon* in their petition to assert that they are entitled to recover reasonable attorneys' fees incurred in preparing their fee petition. (Dkt. 145 at 5.) Notably, in *Spegon*, the court reduced the number of hours in connection with the fee petition from

12

nine hours to 1.6 hours because the time spent on the fee petition was unreasonable in light of the time spent on the merits of the case (25 hours). *Spegon*, 175 F.3d at 554 (finding a ratio of 6.4% to be reasonable).

WCC has requested the Court award them fees for 6.4 hours relating to their work in preparing their fee petition. (Dkt. 145 at 6.) However, 6.4 hours is disproportionate to the amount of time they allegedly spent on the merits of their Response. If 32 hours is accurate as they suggest, then an award of 6.4 hours for preparing their fee petition does not "bear a rational relation" to the number of hours spent on the merits of their Response. This would be a ratio of 20% which is considerably higher than most awarded for preparation of a fee petition under *Ustrak*. *See e.g. Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir.1999) (reducing the hours awarded for time spent preparing the fee petition from 9.9 hours to 1.6 hours on a case that counsel spent under 100 hours litigating (a ratio of 10%)); *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) (finding 1.6 hours billed to the preparation of a fee petition reasonable in light of 140 hours spent on the merits (a ratio of 1%)).

For these reasons, there is a basis for outright denying WCC's request for fees incurred in bringing the Petition. If, however, this Court determines that WCC is entitled to fees incurred in preparing their Petition, this Court should reduce the number of hours by half (or 3.2 hours) and apply the rates it determines are appropriate for preparing the Response. This calculation constitutes a ratio of 10% and is reasonable in light of awards in this district. *Uphoff*, 176 F.3d (10%); *Spegon*, 175 F.3d (6.4%); *Kurowski*, 848 F.2d 767 (1%).

E. **The *Hensley* Factors Favor A Downward Adjustment Of WCC's Fees.**

The lodestar method warrants a downward reduction in WCC's total incurred expenses. *Hensley*, 461 U.S. at 433. Once the amount of hours reasonably expended is multiplied by a

reasonable hour rate, Courts then adjust the lodestar amount upward or downward based on the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and abilities of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases.

*Id.* at 429-30.

As described above, factors (1)-(4), (8), (9), and (12) weigh in favor of a downward adjustment of the fees requested and hours expended by WCC.[3] An eight-page Response based on negotiations between the parties during meet and confer conferences should never warrant 32 hours among three very experienced attorneys who bill at very high rates and are familiar with the case. Further, despite having the burden of proving its entitlement to its fees, WCC does not provide evidence of (5), (6), (7), or (10), and the longstanding relationship with WCC (11) should make writing the Response more efficient due to BakerHostetler's institutional knowledge. For these reasons, Sonrai requests a downward adjustment of the fees WCC purports and the amount of hours expended.

Based on case law in this district, the appropriate rates range from $175 for its most junior attorneys to $465 for its most senior attorneys. Likewise, case law dictates that a reasonable amount expended on the full Response brief would be between five to ten hours. Last, since WCC's success was limited, and its fees awarded for five-eighths of the Response, WCC's fees should be reduced by a further five-eighths. In the alternative, Sonrai requests that WCC's

---

[3] Sonrai does not address factors (5) through (7) or (10) because WCC did not provide any relevant information on these topics despite having the burden of proving its entitlement to its fees.

14

purported fees ($21,278.31 for its Response and $4,294.50 for its Petition) be reduced by at least half.

## CONCLUSION

For the foregoing reasons, Waste Connections, Inc.'s Petition should be reduced to $7,584.38, or at least reduced by half.

Dated: November 1, 2024                                  Respectfully Submitted,

                   /s/ J. Scott Humphrey
              J. Scott Humphrey
              Katie Burnett
              **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
              71 S. Wacker Dr., Suite 1600
              Chicago, Illinois 60606-4637
              Telephone: 312-212-4949
              Facsimile: 312-767-9192
              shumphrey@beneschlaw.com
              kburnett@beneschlaw.com

              *Attorneys for Plaintiff Sonrai Systems, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 1, 2024, he served a copy of the foregoing on all counsel of record via electronic case filing procedures.

                                                        /s/ J. Scott Humphrey

                                                   *One of the Attorneys for Plaintiff*